UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 06 B 08794 |
| GARY COLE, | |
| Debtor. | Chapter 7 |
| | |
| SHELLEY NORTON, | Adv. No. 06 A 01653 |
| Plaintiff, | |
| v. | Judge Pamela S. Hollis |
| GARY COLE, | |
| Defendant. | |

## MEMORANDUM OPINION

This matter comes before the court on the complaint of plaintiff Shelley Norton ("Norton") objecting to the discharge of debtor Gary Cole ("Cole") pursuant to Bankruptcy Code Sections 727(a)(2)(A), 727(a)(3), 727(a)(4), and 727(a)(5), and objecting to the dischargeability of a debt owed by Cole to Norton under Sections 523(a)(2)(A), 523(a)(4), 523(a)(6).[1] For the reasons stated below, the debtor's discharge is denied under Sections 727(a)(3) and 727(a)(4)(A).

## FINDINGS OF FACT

Cole filed his petition for relief under Chapter 7 of the Bankruptcy Code on July 24, 2006. Norton filed her adversary proceeding against Cole on October 20, 2006. Norton's objections to Cole's discharge and the dischargeability of the debt, as set forth in the complaint, arise out of a judgment obtained by Norton against Cole in a state court case (the "State Court

---

[1] The complaint refers only generally to Section 523. However, Norton's post-trial memorandum refers to Sections

-1-

Case"). The State Court Case arose out of Cole's previous representation of Norton as her attorney in a personal injury action.

The court held an evidentiary hearing in this matter on July 19, 2007. The following constitutes the court's findings of fact:

1. In 1982, Norton was injured in an accident where she was hit by a tow truck while parked at a gas station. As a result, Norton sustained various injuries to her knee and leg.

2. Beginning in 1984, Cole represented Norton in a personal injury lawsuit that arose out of Norton's injuries from the truck accident.

3. As a result of Cole's inadequate representation of Norton and other clients, on or about November 15, 1995, the Administrator for the Illinois Attorney Registration and Disciplinary Commission (the "ARDC") filed a ten count complaint against Cole, which included a count relating to Cole's representation of Norton.

4. On or about July 31, 1997, the ARDC issued a report and recommendation wherein it recommended the suspension of Cole from the practice of law for three years.

5. The court takes judicial notice of the following relevant findings from the ARDC's report: Cole represented Norton beginning in 1984 in a personal injury lawsuit. The case was dismissed for want of prosecution in March 1986. Cole refiled the case in March 1987, and the case was reinstated. In July 1989, the case was again dismissed for want of prosecution. Cole moved to vacate the dismissal and the motion was granted. The case was again reinstated. In February 1990, Cole's motion for default was granted and the case was to be set for hearing for purposes of prove-up damages.

---

523(a)(4) and 523(a)(6). Therefore, the court will address each of these, along with Section 523(a)(2)(A).

Cole allegedly failed to set the case for a hearing to prove up damages any time after February 1990. Cole allegedly did not communicate with Norton between March 1986 and August 1990. In 1992, the case was dismissed a third time for want of prosecution. In June 1992, Cole filed a motion to reinstate the case, but did not notice the motion for hearing within 90 days of filing the motion. During this time, Norton was unaware of the status of her case because Cole failed to communicate with her. In July 1993, Norton contacted another attorney to investigate the status of her case. In August 1993, Norton retained Timothy M. Nolan ("Nolan") to represent her. Norton wrote to Cole and asked him to transfer his file to Nolan. Cole failed to respond. In May 1994, Nolan sent Cole a motion to substitute counsel and a motion for an emergency hearing. Cole received notice, but failed to appear in court on the motion. The trial court would not entertain Nolan's motion because Cole failed to appear and remained on the record as Norton's attorney. The trial court sent notice for Cole to appear at a later date, and Cole failed to appear once again. The trial court denied the motion to reinstate the case. Nolan attempted to obtain Cole's cooperation in transferring Norton's file, but Cole failed to respond. (Norton Ex. No. 1.)

6. On or about February 2, 1998, the Supreme Court of Illinois allowed the motion of the Administrator for the ARDC to approve and confirm the report and recommendation of the ARDC hearing board, and suspended Cole from the practice of law for three years. Cole has not engaged in the practice of law since he was suspended.

7.  On or about April 26, 1995, Norton filed the State Court Case in the Circuit Court of Cook County, Illinois, Case No. 95 L 08272, alleging counts of "professional negligence" and "outrage."

8.  On January 25, 1999, as a result of Cole's failure to comply with the state court's discovery order, the state court granted Norton's motion for judgment by default under Rule 219 of the Illinois Supreme Court Rules.

9.  On April 30, 1999, the state court entered judgment against Cole and in favor of Norton in the amount of $200,000 in compensatory damages, and $50,000 in punitive damages for a total of $250,000 plus costs.

10. Cole did not attend the hearing on damages and did not appeal the judgment. Cole has not made any payments on the judgment.

11. On February 7, 2006, the state court entered an order reviving its judgment of April 30, 1999, and ordered Cole to produce all documents requested in Norton's previously issued citation to discover assets within 14 days or he would be subject to sanctions. (Norton Ex. No. 6.)

12. In his Chapter 7 bankruptcy case, Cole lists his gross wages, salary, tips, bonuses, overtime, commissions as $0 on his Statement of Current Monthly Income and Means Test Calculation, line 3. (Norton Ex. No. 7.)

13. On Schedule B, question no. 13 of Cole's bankruptcy petition, Cole lists his stock and interests in incorporated and unincorporated businesses as "[n]one." *Id.*

14. Blue Duck Catering, Inc. is an Illinois corporation that was incorporated in 2002. (Norton Ex. No. 12.)

15. Cole is the president of Blue Duck Catering, Inc. (Norton Ex. No. 13.)

16. Cole has been the owner of Blue Duck Catering since 2002.

17. Blue Duck Catering generated gross receipts in 2002, 2005, and 2006.

18. In 2005, Blue Duck Catering's gross receipts or sales totaled $119,189. (Norton Ex. No. 14.)

## DISCUSSION

### Standards for Nondischargeability under Bankruptcy Code Sections 727(a)(2)(A), 727(a)(3), 727(a)(4), and 727(a)(5)

Norton's complaint cites Bankruptcy Code Sections 727(a)(2)(A)[2], 727(a)(3), 727(a)(4), and 727(a)(5). Section 727 is strictly construed against the objecting creditor and liberally in favor of the debtor, in order to protect the debtor's fresh start. *Bank of India v. Sapru (In re Sapru)*, 127 B.R. 306, 314 (Bankr. E.D.N.Y. 1991); *see also* Fed. R. Bankr. P. 4005 ("At the trial on a complaint objecting to discharge, the plaintiff has the burden of proving the objection.") "Although the burden of proof rests on the creditor at all times, the debtor cannot prevail if he is unable to offer credible evidence after the plaintiff has established a prima facie case." *Clean Cut Tree Serv., Inc. v. Costello (In re Costello)*, 299 B.R. 882, 899 (Bankr. N.D. Ill. 2003) (*citing Sapru*, 127 B.R. at 316).

### Section 727(a)(4)

Section 727(a)(4) bars a debtor's discharge if he knowingly and fraudulently makes a false oath in connection with the case. Specifically, Section 727 provides in relevant part: "[t]he

---
[2] While Norton's arguments under Section 727(a)(2)(A) are not developed in the complaint or elsewhere in the pleadings, the court will address them as relevant to its analysis.

-5-

court shall grant the debtor a discharge, unless - the debtor knowingly and fraudulently, or in connection with the case-- made a false oath or account." 11 U.S.C. § 727(a)(4)(A).

"The purpose of § 727(a)(4) is to ensure that the debtor provides dependable information to those who are interested in the administration of the bankruptcy estate." *Costello*, 299 B.R. at 899. In order to prevail under Section 727(a)(4)(A), Norton must establish the following five elements: (1) Cole made a statement under oath; (2) the statement was false; (3) Cole knew the statement was false; (4) Cole made the statement with the intent to deceive; and (5) the statement related materially to the bankruptcy case. *See* 11 U.S.C. § 727(a)(4); *Structured Asset Servs., LLC v. Self (In re Self)*, 325 B.R. 224, 245 (Bankr. N.D. Ill. 2005); *Bensenville Cmty. Ctr. Union v. Bailey (In re Bailey)*, 147 B.R. 157, 162 (Bankr. N.D. Ill. 1992).

Norton must first show that Cole's statement under oath was false and that Cole knew it was false. "A debtor's petition, schedules, statement of financial affairs, statements made at an 11 U.S.C. § 341 meeting, and answers to interrogatories all constitute statements under oath for purposes of § 727(a)(4)." *Fiala v. Lindemann (In re Lindemann)*, 375 B.R. 450, 469 (Bankr. N.D. Ill. 2007). Cole's bankruptcy petition, schedules, Statement of Currently Monthly Income and Means Test, and answers to interrogatories all constitute statements made under oath. *Id.*; *Self*, 325 B.R. at 245. Nowhere in his bankruptcy schedules or Statement of Financial Affairs and Means Test Calculation did Cole list his interest in Blue Duck Catering.

Bankruptcy Schedule B asks the debtor to list "stock and interests in incorporated and unincorporated businesses. Itemize." Cole has been the president and owner of Blue Duck Catering since 2002, and at the time he filed his petition and Schedule B, he knew that he was the president of Blue Duck Catering. Cole also knew that Schedule B required him to list his

interests in incorporated businesses like Blue Duck Catering, yet he failed to do so. Accordingly, the court finds that Cole's failure to include his interest in Blue Duck Catering on Schedule B of his bankruptcy petition constitutes a false oath.

Under Section 727(a)(4), Norton must also prove that Cole made the false statement with fraudulent intent. "Intent to defraud involves a material representation that you know to be false, or, what amounts to be the same thing, an omission that you know will create an erroneous impression." *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998).

To find the requisite degree of fraudulent intent, the court must find that Cole knowingly intended to defraud or displayed a reckless disregard for the truth. *In re Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992). Direct evidence of intent to defraud may not be available. *Costello*, 299 B.R. at 900. As a result, the requisite intent under Section 727(a)(4)(A) may be inferred from circumstantial evidence or by inferences based on a course of conduct. *Yonikus*, 974 F.2d at 905. Reckless disregard means "not caring whether some representation is true or false . . . [and] is, at least for purposes of the provisions of the Bankruptcy Code governing discharge, the equivalent of knowing that the representation is false and material." *Chavin*, 150 F.3d at 728 (*citing Yonikus*, 974 F.2d at 905).

At trial, Cole testified that he did not know if his failure to list Blue Duck Catering on his Schedule B was false. The court affords this statement little weight as Cole, an attorney, knew that Schedule B required him to lists stock and interests in incorporated businesses. The Seventh Circuit has stated that "debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate." *Self*, 325 B.R. at 246 (*quoting Yonikus*, 974 F.2d at 904). Accordingly, even if Cole

believed his interest in Blue Duck Catering was unavailable to the bankruptcy estate, Cole had a duty to disclose his interest therein. Cole did not so disclose. Further, Cole did not provide any explanation or justification for his failure to disclose this business interest. At no time since filing the petition has Cole sought to amend his schedules to reflect his interest in Blue Duck Catering. Thus, the court finds that Cole displayed a reckless disregard for whether his bankruptcy Schedule B was false, and therefore, for purposes of Section 727(a)(4)(A), he knew his representation was false. Moreover, by making this false representation, Cole knew he would create an erroneous impression. The court therefore finds that Cole possessed fraudulent intent as required under Section 727(a)(4)(A).

Finally, Norton must show that Cole's false oath relates to a material matter. *See Lee Supply Corp. v. Agnew (In re Agnew)*, 818 F.2d 1284, 1290 (7th Cir. 1987). "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984). The court finds that as president, Cole's interest in a company that generated gross receipts in 2002, 2005, and 2006, including in excess of $119,000 in gross receipts for the year prior to his bankruptcy petition, is material to his bankruptcy case. Indeed, Cole's interest in Blue Duck Catering and any related income associated therewith is material to his bankruptcy case.

The court finds that Cole intended to deceive his creditors by omitting his interest in Blue Duck Catering from his bankruptcy schedules and that he showed reckless disregard as to whether his representations were true or false. Finally, the subject matter of his false oath is

material to his bankruptcy case. Therefore, Cole's discharge is denied pursuant to Section 727(a)(4)(A).

### Section 727(a)(3)

Norton also claims that Cole's discharge should be denied under Section 727(a)(3). Section 727(a)(3) requires that in order to obtain a discharge, debtors must produce records that provide creditors "with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *Lindemann*, 375 B.R. at 467. "The overriding goal of § 727(a)(3) is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." *Costello*, 299 B.R. at 897 (internal quotation omitted). "The statute places an affirmative duty on the debtor to create books and records accurately documenting [his] financial affairs." *Lindemann*, 375 B.R. at 467 (*citing In re Juzwiak*, 89 F.3d 424, 429 (7th Cir. 1996)). In order to qualify for a discharge in bankruptcy, a debtor is required to maintain and produce written documentation of all of his transactions. *Id.*; *Juzwiak*, 89 F.3d at 429-430.

In this case, the court finds that Cole failed to maintain and produce written documentation of his transactions, particularly as they relate to Blue Duck Catering. As discussed, Cole's bankruptcy schedules and Statement of Financial Affairs and Means Test Calculation did not include any information or documentation relating to his interest in Blue Duck Catering, or relating to the business itself. Cole's bankruptcy petition and related schedules and forms do not include any information sufficient to provide creditors like Norton with enough information to ascertain Cole's financial condition and track his financial dealings. Accordingly, the court finds that Cole did not comply with his affirmative duty as a debtor to

accurately document his financial affairs. The court therefore finds that Cole's discharge is denied pursuant to Section 727(a)(3).

## Section 727(a)(2)(A)

Bankruptcy Code Section 727(a)(2)(A) provides that a discharge will be denied if the "debtor, with intent to hinder, delay or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed . . . - property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A). Under Section 727(a)(2)(A), Norton must prove the following elements: (1) that Cole transferred or concealed property; (2) belonging to the estate; (3) within one year of filing the petition; (4) with the intent to hinder, delay, or defraud a creditor of the estate. *See Costello*, 299 B.R. at 894.

Norton states in the "Nature of the Case" section of the complaint that she objects to Cole's discharge under Section 727(a)(2)(A). However, the pleadings do not develop this argument or address any facts in support of a finding under Section 727(a)(2)(A). At trial, there was no evidence offered to support that within one year of filing the petition, Cole transferred or concealed his property with the intent to hinder, delay, or defraud Norton. Norton did, however, offer evidence regarding Cole's interest in Blue Duck Catering. While the court has found that Cole was and is the president and owner of Blue Duck Catering and that he failed to disclose this interest on his bankruptcy schedules, Norton has not established that Cole transferred or concealed his interest in Blue Duck Catering within one year of filing his bankruptcy petition, or that he intended to delay, hinder, or defraud Norton as required by Section 727(a)(2)(A).[3] Norton

---

[3] At trial, Norton also offered evidence relating to several automobiles that may have been Cole's property pre-petition. However, it was unclear whether the automobiles did in fact belong to Cole pre-petition. The evidence is insufficient to establish that any such automobiles were property of the estate, or that Cole transferred or concealed them within one year of the filing of the petition. Moreover, under Section 727(a)(2)(B), Norton has not proven that

has not proven any affirmative act by Cole to transfer or conceal any such interest with the intent to delay, hinder, or defraud. Accordingly, Norton has failed to meet her burden under Section 727(a)(2)(A).

### Section 727(a)(5)

Finally, Norton claims that Cole's discharge should be denied under Section 727(a)(5). Section 727(a)(5) provides that "[t]he court shall grant the debtor a discharge, unless – the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities. . ." 11 U.S.C. § 727(a)(5). "Section 727(a)(5) is broadly drawn and clearly gives a court broad power to decline to grant a discharge in bankruptcy where the debtor does not adequately explain a shortage, loss, or disappearance of assets." *Self*, 325 B.R. at 250. (*quoting First Federated Life Ins. Co. v. Martin (In re Martin)*, 698 F.2d 883, 886 (7th Cir. 1983)). "By penalizing a debtor who is insufficiently forthcoming about what happened to his assets, section 727(a)(5) is one of several Code provisions meant to relieve creditors and courts of the full burden of reconstructing the debtor's financial history and condition, placing it instead upon the debtor." *Cohen v. Olbur (In re Olbur)*, 314 B.R. 732, 740 (Bankr. N.D. Ill. 2004).

There are two stages of proof under Section 727(a)(5). First, Norton must show that at one time Cole owned substantial and identifiable assets that are no longer available for his creditors. Second, if Norton meets that burden, Cole is obligated to provide a satisfactory explanation for the loss. As discussed *supra*, Cole has an interest in Blue Duck Catering, and Blue Duck Catering generated gross receipts in 2002, 2005, and 2006. However, the evidence adduced at trial does not prove that Cole's interest in Blue Duck Catering and any income relating thereto constitute substantial and identifiable assets that are no longer available for his

---

these automobiles were property of the estate post-petition.]-

creditors. Therefore, the court finds that Norton has failed to meet her burden under Section 727(a)(5).

Standards for Nondischargeability under Sections 523(a)(2)(A), 523(a)(4), and 523(a)(6)

Norton also claims that the $250,000 debt entered in the State Court Case should be excepted from discharge pursuant to Bankruptcy Code Sections 523(a)(2)(A), 523(a)(4), and 523(a)(6). Because the court has denied Cole's discharge under Sections 727(a)(3) and 727(a)(4)(A), it will briefly address Norton's claims under Section 523.

### Section 523(a)(2)(A)

Section 523(a)(2)(A) lists three separate grounds for dischargeability: actual fraud, false pretenses, and a false representation. *Vozella v. Basel-Johnson (In re Basel-Johnson)*, 366 B.R. 831, 844 (Bankr. N.D. Ill. 2007). Rather than establishing false pretenses or false representation, at trial, Norton's case centered around evidence offered to support a finding of actual fraud. As indicated by the court at the close of evidence, establishing a claim for actual fraud under Section 523(a)(2)(A) requires a different showing than establishing a claim for fraud in the state court. 'Actual fraud' may encompass "any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another." *Basel-Johnson*, 366 B.R. at 845-46 *(quoting McClellan v. Cantrell*, 217 F.3d 890, 894 (7th Cir. 2000)). Therefore, in order to demonstrate actual fraud under Section 523(a)(2)(A), Norton must establish: (1) a fraud occurred; (2) Cole intended to defraud Norton; and (3) the fraud created the debt owed to Norton. *See id.* at 846. The Seventh Circuit has defined 'fraud' as:

> a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can

> be laid down as a general proposition for defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.

*McClellan*, 217 F.3d at 893 (*quoting Stapleton v. Holt*, 250 P.2d 451, 453-54 (Okla. 1952).

Norton has failed to demonstrate actual fraud under Section 523(a)(2)(A). First, Norton has not established that a fraud occurred. Nothing shown in the facts or circumstances of Cole's representation of Norton supports a finding that a fraud occurred. While Cole's representation of Norton was far from satisfactory and may have amounted to malpractice, those facts do not establish fraud for purposes of Section 523(a)(2)(A). Second, there is no evidence to suggest Cole intended to defraud Norton. Cole violated several of the Illinois Rules of Professional Conduct and Supreme Court Rule 771, but such violations do not prove there was any intent to defraud Norton. Finally, the debt at issue arose from the default judgment Norton obtained against Cole, the underlying subject of which was the default judgment obtained as a result of Cole's discovery violation in the State Court Case. The debt was not the result of any fraud perpetrated by Cole. Accordingly, Norton has failed to meet her burden under Section 523(a)(2)(A).

Section 523(a)(4)

Norton also argues that the debt is nondischargeable under Section 523(a)(4). Section 523(a)(4) provides that a debtor cannot discharge any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny. 11 U.S.C. § 523(a)(4). "The Seventh Circuit has found that a fiduciary relationship exists for purposes of § 523(a)(4) when there is 'a difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter.'" *Basel-Johnson*, 366 B.R. at 847 (*quoting In re Marchiando*, 13

F.3d 1111, 1115 (7th Cir. 1994)). Included among fiduciary relationships is the lawyer-client relationship. *Id.*; *see also In re Frain*, 230 F.3d, 1014, 1017 (7th Cir. 2000); *Marchiando*, 13 F.3d at 1116.

Defalcation is not defined in the Bankruptcy Code. *Basel-Johnson*, 366 B.R. at 847. One court has defined defalcation within the context of Section 523(a)(4) as "the misappropriation of trust funds held in any fiduciary capacity and the failure to properly account for such funds." *Id.* (quoting *Strube Celery & Vegetable Co., Inc. v. Zois (In re Zois)*, 201 B.R. 501, 506 (Bankr. N.D. Ill. 1996)). "Although the Seventh Circuit has not clearly defined the level of tortious conduct necessary to constitute a defalcation in the context of § 523(a)(4), it has required something more than mere negligence or mistake, but less than fraud." *Id.* "Some degree of culpability is required to make a debt non-dischargeable as a defalcation under § 523(a)(4), and a debtor's knowledge is irrelevant." *Id.* (internal citation omitted).

As lawyer and client, Cole and Norton had a fiduciary relationship as contemplated by Section 523(a)(4). However, there is nothing to suggest that Cole committed a defalcation while acting in his capacity as a fiduciary. Norton has offered no evidence to demonstrate that Cole misappropriated any funds or engaged in any action beyond mere negligence or mistake. Cole's failures in his representation as Norton's attorney do not equate to a defalcation. Norton has not established that Cole's actions went beyond mere negligence or mistake. Moreover, she has not alleged or demonstrated larceny or embezzlement. Nothing in the evidence supports a finding that the debt at issue was caused by Cole's defalcation. Accordingly, Norton has failed to establish a claim under Section 523(a)(4).

## Section 523(a)(6)

Finally, Norton argues that the debt should be nondischargeable under Section 523(a)(6). Pursuant to Section 523(a)(6), a debt is nondischargeable if it is for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The Supreme Court has clarified the meaning of this subsection, stating that "only acts done with the actual intent to cause injury" come within its scope. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). In other words, "[t]he injury itself must be deliberate or intentional, 'not merely a deliberate or intentional act that leads to injury.'" *Bino v. Bailey (In re Bailey)*, 197 F.3d 997, 1000 (9th Cir. 1999) (*quoting Geiger*, 523 U.S. at 61).

In order to prevail, Norton must prove by a preponderance of the evidence that (1) Cole caused an injury; (2) his actions were willful; and (3) his actions were malicious. *See French Kezlis & Kominiarek, P.C. v. Carlson*, 99 C 6020, 2000 WL 226706, at *3 (N.D. Ill. Feb. 22, 2000). The court finds that Cole's actions do not constitute willful and malicious injury under Section 523(a)(6). Even though his actions caused injury to Norton, there is no evidence to suggest that Cole intended to cause injury to Norton. The injury itself was not deliberate or intentional. Therefore, Norton has failed to demonstrate that Cole actually intended to harm Norton, and not merely that Cole acted intentionally, and Norton was thus harmed. *See Geiger*, 523 U.S. at 61-62. Because injuries either negligently or recklessly inflicted do not come within the scope of Section 523(a)(6), *id.*, Norton has failed to establish a claim under Section 523(a)(6).

## CONCLUSION

For the reasons stated above, the court grants, in part, the relief requested by plaintiff Shelley Norton, and Gary Cole's discharge is denied pursuant to Bankruptcy Code Sections 727(a)(3) and 727(a)(4)(A). A separate order will be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

Date: NOV 15 2007

_____
PAMELA S. HOLLIS
United States Bankruptcy Judge